IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,　:
　　　　　　　　　　　　　　　　　:
v.　　　　　　　　　　　　　　　:　　CRIMINAL INDICTMENT NO.:
　　　　　　　　　　　　　　　　　:　　2:17-CR-00021-RWS-JCF
EDWARD L. POWELL　　　　　:

## ORDER and REPORT AND RECOMMENDATION

This case is before the Court on Defendant's Motion To Suppress DNA Evidence And Fruit Of State Search Warrants (Doc. 16).  For the reasons discussed below, it is **RECOMMENDED** that Defendant's motion be **DENIED**.

## Procedural History

An Indictment filed June 14, 2017 charges Defendant with committing bank robberies at a Piedmont Bank branch in Norcross, Georgia on July 7, 2016 and a BB&T branch in Buford, Georgia on July 15, 2016.  (Doc. 1).  Defendant moved to suppress DNA evidence obtained pursuant to a state search warrant issued on October 12, 2016 and all fruits derived therefrom.[1]  (Doc. 16).  The Court conducted a hearing on Defendant's motion on June 18, 2018 (*see* Doc. 27), and the transcript

---

[1] Defendant also challenged the search of a cellphone pursuant to a warrant, but at the suppression hearing defense counsel stated that the Government had represented that there was nothing on the phone it intended to use at trial, and therefore "the motion to suppress is moot as to that phone."  (Tr. 4).  Defendant also filed a Motion For Pretrial Daubert Hearing (Doc. 15) but counsel stated at the hearing that Defendant wanted to defer consideration of that motion to the District Judge (Tr. 3-4).

1

was filed on July 3, 2018 (Doc. 33).[2]  Defendant filed a post-hearing brief (Doc. 34); the Government responded (Doc. 37); and Defendant replied (Doc. 39).   With briefing complete, the undersigned now considers the merits of Defendant's motion.

## Discussion

### I.   Facts[3]

Hall County Sheriff's Office Investigator Tom Wilson is the lead investigator for an investigation of a robbery that occurred in July 2016 at the BB&T bank branch located on Lanier Islands Parkway in Buford, Georgia.  (Tr. 47).   Video of that robbery showed that the suspect's arm hit the glass in the door as he attempted to flee out the front door, leaving his sweat on the glass.  (Tr. 49-50).  The suspect then ran out of a side door, and his stocking mask came off his head and landed in the parking lot.  (Tr. 50).  A crime scene technician collected the mask and swabbed the sweat off of the glass panel in the front door.  (Tr. 48-50, 55-56).  That evidence was sent to the Georgia Bureau of Investigation (GBI) lab for analysis.  (Tr. 49).  The GBI sent a report to Hall County investigators informing them that there was a CODIS[4] match and provided a name, date of birth, Florida Department of Law

---

[2] References to the transcript will be designated as "Tr. __."

[3] These facts are taken from the testimony of Jose A. Mundo, a crime lab scientist with the Georgia Bureau of Investigation; Tom Steve Wilson, an Investigator with the Hall County Sheriff's Office; and Jordan Dayan, an Investigator with the Federal Defender's Office, as well as exhibits admitted during the hearing (*see* Doc. 29).

[4] CODIS stands for "Combined DNA Index System."  *Maryland v. King*, 133 S.Ct. 1958, 1968 (2013).  It "connects DNA laboratories at the local, state, and national

Enforcement (FDLE) number, and an FBI number for the match. (Tr. 50; Gov't Ex. 1).  Specifically, the report noted that the GBI had received a sealed package containing clothing, a brown knitted stocking, and swabbings, and the DNA from that evidence had been matched to a convicted offender from Florida, "Gregory Powell," date of birth 10/12/1967, FDLE number 02369263, and FBI number 490977HA6.  (Gov't Ex. 1).  The report also stated, "we require a new biological sample from the offender be submitted as soon as possible.  Upon submission, the offender will be added as an official suspect and a new DNA report will follow." (*Id.*).  Wilson then ran the identifying information about the offender through the NCIC[5] database, and he received information indicating that "Gregory M. Powell" is an alias for Edward Lewis Powell, who has the same FDLE number and FBI number associated with the offender in the CODIS match report; that Edward Lewis Powell has provided multiple birth dates, including 10/12/1967; and that Edward Lewis Powell was in the Butts County, Georgia jail.  (Tr. 51, 59-61, 64-65, 70; *see*

---

level" and "collects DNA provided by local laboratories taken from arrestees, convicted offenders, and forensic evidence found at crime scenes." *Id.*  CODIS provides "standardization of the points of comparison in DNA analysis," i.e., "13 loci at which the STR alleles are noted and compared," which "are from the non-protein coding junk regions of DNA, and are not known to have any association with genetic disease or any other genetic predisposition." *Id.* (internal quotation omitted). "Thus, the information in the database is only useful for human identity testing." *Id.* (internal quotation omitted).

[5] The National Crime Information Center (NCIC) "is a computerized index of criminal justice information operated by the FBI." *United States v. Harris*, 172 Fed. Appx. 950, 956 n.1 (11th Cir. 2006).

*also* Gov't Ex. 6[6]).  Wilson therefore believed that the "Gregory Powell" identified in the CODIS match report and Edward Lewis Powell, i.e., Defendant, were the same person.  (Tr. 70).

On October 12, 2016 Wilson applied for and obtained a search warrant signed by a Butts County magistrate judge to obtain two buccal (cheek) swabs from Defendant at the Butts County jail.  (Tr. 51-52, 55, 70; Gov't Exs. 3, 4).  Wilson and an FBI agent then went to the Butts County jail and obtained the DNA samples.  (Tr. 54-55; Gov't Ex. 5).  When Wilson saw Defendant, he observed that Defendant looked like the suspect he had observed in the surveillance video and as described by witnesses.  (Tr. 70-71).  When he executed the search warrant, Wilson believed he was "executing the search warrant on the perpetrator who committed the bank robbery in this case[.]"  (Tr. 71).

Jordan Dayan, a staff investigator with the Federal Defender's Office in Atlanta, was assigned to Defendant's case and ran an Accurint report in reference to Gregory M. Powell.  (Tr. 81).  That report indicated that "there's a Gregory M. Powell that lived in Florida who was deceased" and was Defendant's brother, but his date of birth was April 28, 1966.  (Tr. 82-83; Def. Ex. 1).  The report does not

---

[6] Gov't Ex. 6 is an NCIC report for Edward Lewis Powell that appears to have been run in June 2018 which shows that his FDLE number is 02369263; his FBI number is 490977HA6; one of the birth dates listed is 10/12/1967; and Gregory Powell and Gregory M. Powell are two of his aliases.

show that Gregory Powell had a Florida Department of Law Enforcement number or FBI number.  (Tr. 83).  Dayan did not run a criminal history through NCIC or GCIC on Gregory M. Powell, nor did he make a request through the Florida Department of Law Enforcement to determine if Gregory M. Powell with the date of birth of April 28, 1966 had been arrested in Florida and does not know if Gregory had ever been arrested in Florida (Tr. 83-85).

## II.   <u>Analysis</u>

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ."  U.S. Const. amend. IV.  "The 'ultimate touchstone of the Fourth Amendment is reasonableness.' "  *United States v. Walker*, 799 F.3d 1361, 1363 (11th Cir. 2015) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)).  "Where a search is conducted under the authority of a warrant, the defendant challenging the search carries the burden of showing the warrant to be invalid."  *United States v. Kilgore*, 2012 U.S. Dist. LEXIS 154148, at *14 (N.D. Ga. Sept. 13, 2012) (internal quotation omitted), *adopted by* 2012 U.S. Dist. LEXIS 153867 (N.D. Ga. Oct. 26, 2012).  "It is not easy for a Defendant to meet this burden, and a judicial preference is accorded searches under a warrant." *United States v. Teague*, No. 2:10-CR-006-RWS-SSC,

2010 U.S. Dist. LEXIS 142717, at *86 (N.D. Ga. Nov. 22, 2010) (internal quotation omitted), *adopted by* 2011 U.S. Dist. LEXIS 42260 (N.D. Ga. Nov. 22, 2010).

"The Fourth Amendment allows warrants to issue on probable cause, a standard well short of absolute certainty." *L.A. County v. Rettele*, 550 U.S. 609, 615 (2007). The task of a magistrate judge, when issuing a warrant, " 'is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The *Miller* court explained the role of a court reviewing a search warrant:

> Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrate[ judges] in their probable cause determinations.

*Miller*, 24 F.3d at 1361 (citing *Gates*, 462 U.S. at 236-37).

The undersigned has considered Investigator Wilson's affidavit (Gov't Ex. 4) and Defendant's arguments about its deficiencies (*see* Docs. 34, 39) with these principles in mind. It is not necessary to determine whether the affidavit established the existence of probable cause to support the issuance of the search warrant for Defendant's DNA, however, because the good faith exception to the exclusionary rule set out in *United States v. Leon*, 468 U.S. 897 (1984) applies in this case. *See,*

6

*e.g., United States v. Jones*, 149 F. Appx 954, 963 (11th Cir. 2005) (unpublished decision) ("We need not determine whether probable cause existed, because the good faith exception applies here."); *United States v. Dos Santos*, No. 1:05-CR-613-TWT, 2006 U.S. Dist. LEXIS 55943, at *15 (N.D. Ga. June 21, 2006) ("The good faith exception is applicable to this case; therefore, this court need not reach the underlying issue of probable cause."), *adopted by* 2006 U.S. Dist. LEXIS 55944 (N.D. Ga. July 25, 2006).

The exclusionary rule, which provides that evidence seized as the result of a search violative of the Fourth Amendment may not be used by the Government in a subsequent criminal prosecution, is " 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect.' " *Martin*, 297 F.3d at 1312 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). In *Herring v. United States*, 555 U.S. 135 (2009), the Supreme Court addressed the limited role of the exclusionary rule:

> The fact that a Fourth Amendment violation occurred—*i.e.*, that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies. *Illinois v. Gates*, 462 U.S. 213, 223[] (1983). Indeed, exclusion "has always been our last resort, not our first impulse," *Hudson v. Michigan*, 547 U.S. 586, 591[] (2006), and our precedents establish important principles that constrain application of the exclusionary rule.

*Id.* at 140. The Court explained that "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and

7

sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* at 144. The purpose of the exclusionary rule is "to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.*

In *Leon*, the Supreme Court modified the exclusionary rule to allow prosecutors to use evidence "obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." 468 U.S. at 900. In *Martin*, the Eleventh Circuit Court of Appeals explained what has become known as the *Leon* good faith exception to the exclusionary rule:

> [*Leon*] stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause. The *Leon* good faith exception applies in all but four limited sets of circumstances. *Id.* at 923. The four sets of circumstances are as follows: (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned his judicial role in the manner condemned in" *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319[] (1979); (3) where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where, depending upon the circumstances of the particular case, a warrant is "so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." *Id.* (internal quotation marks omitted).

*Martin*, 297 F.3d at 1313 (original formatting altered).

8

The undersigned finds that none of the four circumstances described in *Leon* are present here.  Defendant has not shown that Investigator misled the issuing judge; there is no evidence that the issuing judge abandoned his judicial role in issuing the warrant; and the warrant sufficiently describes the person searched and the things to be seized, i.e., buccal swabs from Defendant.  (*See* Gov't Ex. 3).  Moreover, the affidavit was not so lacking in indicia of probable cause to render official belief in its existence unreasonable.

Investigator Wilson's affidavit described the investigation of the bank robbery at BB&T on July 15, 2016, including the collection of a swab of the suspect's sweat from the glass door panel and the stocking mask, and further stated that he was advised on October 7, 2016 that the samples given to the GBI

> came back with a name of Gregory M. Powell, date of birth 10/12/67. Inv. Wilson ran the information through GCIC/NCIC and confirmed the name of Gregory M. Powell with the same date of birth.  Inv. Wilson ran a criminal history on Gregory Powell and the information came back as Edward Lewis Powell, date of birth 10/12/67, with an AKA Gregory M. Powell.  The criminal history information shows Edward Lewis Powell incarcerated at the Butts County jail.

(Gov't Ex. 4).  The warrant sufficiently alleges facts—in particular that a DNA match existed between DNA taken from evidence left by the suspect at the crime scene and a DNA sample of an offender believed to be Defendant via an NCIC search—that support a reasonable belief that probable cause existed.  *See, e.g.*, *United States v. Hinton*, 113 F. Supp. 3d 1277, 1294-95 (N.D. Ga.) ("[E]ven if

9

Investigator Thomas had included [defendant's First Offender status] in his affidavits, the undersigned finds that it would not 'have prevented a finding of probable cause,' . . . because the affidavit would have still shown that Defendant's DNA profile matched the DNA from the sample taken from the crime scene, thus establishing probable cause." (quoting *Madiwale v. Savaiko*, 117 F.3d 1321, 1326-27 (11th Cir. 1997))), *adopted by* 113 F. Supp. 3d 1277, 1279 (N.D. Ga. 2015), *aff'd* 676 Fed. Appx. 842 (11th Cir. 2017); *see also United States v. Kriesel*, 720 F.3d 1137, 1152 (9th Cir. 2013) ("Based on the CODIS identification, law enforcement has probable cause to take a new sample of blood from the identified suspect."); *United States v. Humbert*, 336 Fed. Appx. 132, 137 (3rd Cir. 2009) (finding that even if certain statements in affidavit "should have been excised, the DNA evidence does not need to be suppressed, as we agree with the District Court that the match between Humbert's original DNA sample and the DNA found on Mrs. Robinson establish probable cause to obtain a new sample of Humbert's DNA"); *Williams v. Reinhardt*, No. 15-121 (JLL), 2016 U.S. Dist. LEXIS 123654, at *10-11 (D. N.J. Sept. 12, 2016) ("[C]ourts both within this federal circuit and in New Jersey have concluded that a preliminary CODIS DNA match can itself be sufficient to support a finding of probable cause where the DNA samples being tested came from evidence reasonably connected to the alleged crime." (collecting cases)); *Shaw v. Uribe*, No. 11-10675-CJC (JPR), 2013 U.S. Dist. LEXIS 182834, at *55 n. 21 (C.D.

Cal. Oct. 10, 2013) (finding that the search warrant "stated the probable cause for obtaining [the defendant'] DNA, namely, that CODIS matched his DNA profile to the suspect's in F.R.'s cold case."); *Merriel v. Sec'y*, No. 6:11-cv-1100-Orl-37DAB, 2013 U.S. Dist. LEXIS 49019, at *10 (M.D. Fla. Apr. 4, 2013) ("[H]ere the DNA evidence obtained from the victim[] matched a known DNA profile in the CODIS database, thereby establishing a DNA match in this case.  That match was sufficient to make Petitioner a suspect in this case and to establish probable cause to obtain a warrant to compel him to give a DNA sample.").

Defendant argues, however, that the affidavit does not establish probable cause to believe that the person identified in the CODIS match report, i.e., Gregory Powell, was Defendant, and he contends that the NCIC report by itself is insufficient to make that showing.  (*See* Doc. 34 at 16-20).  Wilson ran the NCIC report based on the information provided in the CODIS match report, i.e., offender name Gregory Powell, date of birth October 12, 1967, an FLDE number of 02369263, and an FBI number of 490977HA6 (Gov't Ex. 1), and NCIC returned a report for Edward Lewis Powell, with multiple aliases including Gregory M. Powell, multiple dates of birth including October 12, 1967, and with the same FDLE and FBI numbers.  (Tr. 51, 59-61, 64-65, 70; *see* Gov't Ex. 6).  Investigator Wilson also had information that the Edward Lewis Powell identified in the NCIC report was at the Butts County jail, which is where Defendant was located.  (Tr. 51).

11

The undersigned finds that the information provided about the offender in the CODIS match report as well as the NCIC information concerning Edward Lewis Powell, i.e., his alias of Gregory M. Powell, his date of birth, and his location at the Butts County jail (which was confirmed), were sufficient indicia of probable cause to believe that Defendant was the person identified as the source of the offender DNA sample matched to the DNA found on the evidence from the crime scene.[7] Additionally, although not included in the affidavit, Wilson testified that the height and weight of Edward Lewis Powell included in the NCIC report were similar to the suspect's weight and height as depicted in the bank's surveillance video.  (Tr. 73). Thus, the information in the affidavit, as well as additional information known to Investigator Wilson but not included in the affidavit, provide sufficient indicia of probable cause to determine that his reliance on the warrant was reasonable.   *See, e.g., United States v. Bridges*, 347 Fed. Appx. 459, 463 (11th Cir. 2009) (finding that the investigator's "affidavit and the additional facts known to him that were omitted

---

[7] Defendant asserts that "Investigator Wilson knew that the NCIC frequently contains mistakes about a defendant's identification" and "[y]et, he did not present that information to the magistrate, thereby misleading her about the accuracy of the information."  (Doc. 34 at 28). Wilson did not testify that "NCIC *frequently* contains mistakes," he acknowledged that "sometimes" information might not be accurate, although he did not recall "having incorrect information come back with people [he had] dealt with in an investigation."  (Tr. 66-67).  Nor has Defendant shown that the information Wilson presented to the magistrate judge, i.e., that Edward Lewis Powell has used the alias of Gregory M. Powell, was inaccurate, or that he knew or believed it to be inaccurate.

from the affidavit contained enough indicia of probable cause to determine that his reliance on the warrant was reasonable"); *see also Kilgore*, 2012 U.S. Dist. LEXIS 154148, at \*27 (finding that the officers "had an objectively reasonable basis to believe that the warrant was valid" based on the information contained in the affidavit as well as information not included in the affidavit).[8]

The undersigned finds that it was not unreasonable for Investigator Wilson "to believe that what he wrote in the affidavit would be sufficient to support a finding of probable cause," nor was it unreasonable for him to believe that the warrant was supported by probable cause when he executed it. *Martin*, 297 F.3d at 1315. Rather, "[t]he affidavit contained sufficient indicia of probable cause to enable a reasonable officer to execute the warrant thinking it valid." *Id.* Accordingly, the *Leon* good faith exception to the exclusionary rule applies. Moreover, there is no evidence that Investigator Wilson's conduct in seeking the warrant or in executing the warrant was "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently

---

[8] Defendant argues that the Court should not consider Government's Exhibit 6, an NCIC report for Edward Lewis Powell, because "the only evidence this Court should consider as relevant to the determination of probable cause for the warrant is the information that the magistrate judge had at the time she issued the warrant." (Doc. 34 at 24-25). Investigator Powell included information from his NCIC search in the affidavit (Gov't Ex. 4), and to the extent that the NCIC provided additional information linking Edward Lewis Powell to the offender identified in the CODIS match, including his FDLE number and FBI number, the Court may consider that additional information—known to Investigator Wilson—when he requested the warrant to determine if *Leon* applies.

culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144.  In fact, when Wilson observed Defendant at the jail when he went to execute the warrant, he noted that Defendant looked like the suspect he had seen in the bank's surveillance photo and as described by witnesses.  (Tr. 70-71).  Nor is there evidence that Wilson engaged in "deliberate, reckless, or grossly negligent conduct," such that exclusion of the evidence seized is warranted.[9]  *Id.*  It is therefore **RECOMMENDED** that Defendant's motion to suppress DNA evidence obtained from Defendant pursuant to a search warrant issued be **DENIED**.

### Summary

For the reasons discussed above, it is **RECOMMENDED** that Defendant's Motion To Suppress DNA Evidence And Fruit Of State Search Warrants (Doc. 16) be **DENIED**.

**IT IS ORDERED** that, subject to a ruling by the District Judge on any objections to orders or recommendations of the undersigned Magistrate Judge, this case is **certified ready for trial.**

---

[9] Defendant argues that "[t]he danger of ignoring probable cause is highlighted in this case because Gregory M. Powell was a real, separate person," i.e., Defendant's brother, and she asserts that "[i]f the magistrate had that information, she might have concluded there was an identity or clerical error rather than simply a second name for the first person." (Doc. 34 at 22-23, 27-28).  The undersigned disagrees. There is no evidence that Defendant's brother, i.e., the "real" Gregory M. Powell, shares the same birthdate, FDLE number, or FBI number with the CODIS match report, while the NCIC report for Edward Lewis Powell indicates that the date of birth, FDLE number, and FBI number listed in the CODIS match report are his.

**IT IS SO ORDERED, REPORTED AND RECOMMENDED** this 19th

day of October, 2018.

/s/ J. Clay Fuller
J. Clay Fuller
United States Magistrate Judge